IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| **Nazar Abdulmajeed Ali**, <br><br> Plaintiff, <br><br> v. <br><br> **WorldWide Language Resources, LLC**, <br><br> Defendant. | **No. 5:20-CV-00638-D** |

| | |
|---|---|
| **Abdulameer Kareem Waly**, <br><br> Plaintiff, <br><br> v. <br><br> **WorldWide Language Resources, LLC**, <br><br> Defendant. | **No. 5:20-CV-00644-D** |

**Order**

Nazar Abdulmajeed Ali and Abdulameer Kareem Waly (together, "the Translators") have each sued their former employer, WorldWide Language Resources, LLC, for race and national origin discrimination. Compl., D.E. 1.[1] This case has been riddled with discovery issues—In April 2022, the court granted WorldWide's motion to compel the Translators to produce medical records, identify employers they worked for after leaving WorldWide, and hand over various communications between the Translators. Order on First Mot. Compel, D.E. 48. The court further instructed the Translators that, if they withheld responsive documents based on privilege, they must give WorldWide a privilege log. *Id.* In July, WorldWide once again moved to compel discovery. Second Mot. Compel, D.E. 52. Its most recent motion asks that the court force the Translators to appear for new depositions, produce written communications, and bear WorldWide's costs. For the reasons below, the court grants WorldWide's motion (D.E. 52) in full.

I.  Discussion

The Federal Rules allow a requesting party to move to compel if the responding party's discovery responses are incomplete or inadequate. Fed. R. Civ. P. 37(a). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

---

[1] Unless otherwise noted, docket citations in this order refer to case 5:20-CV-00638-D, the lead case in this pair of consolidated cases. Waly also asserts a claim under the Americans with Disabilities Act. *Waly v. WorldWide Lang. Res., LLC*, No. 5:20-CV-00644-D, Am. Compl., D.E. 9.

### A. The Translators' Communications

WorldWide alleges that, during their depositions, both Ali and Waly suggested that they had communicated with one another about their claims against WorldWide. Mem. Supp. Second Mot. Compel at 3–6, D.E. 53. When asked for more information about those communications, however, both refused to respond. *Id.* Instead, they claimed that the conversations were either "private" or "privileged." *Id.* At no point did their counsel instruct them not to answer WorldWide's questions based on privilege or move for a protective order. *Id.* at 5.

Deponents may only refuse to answer questions for a handful of reasons. *See, e.g.*, *Ralston Purina Co.* v. *McFarland*, 550 F.2d 967, 973 (4th Cir. 1977) (noting that an attorney instructing his client not to answer relevant questions was "indefensible and utterly at variance with the . . . Federal Rules[.]"); *Lawrence* v. *Tiger Swan, Inc.*, No. 5:10-CV-379-BO, 2012 WL 34221, at *2 (E.D.N.C. Jan. 6, 2012); *see also* Fed. R. Civ. P. 30(c)(2). Among these are a valid claim of privilege, a court-ordered limitation, or a motion under Rule 30(d)(3). *Lawrence*, 2012 WL 34221, at *2. Notably, neither irrelevance nor vague privacy interests lie within the protected class of objections. *See id.* So the Translators' contentions that their conversations were private do not shield them from answering WorldWide's questions.

Although the Translators repeatedly objected to deposition questions based on the attorney-client privilege, they declined to explain why the privilege applies.[2] They now claim that their

---

[2] During Waly's deposition, the Translators' attorney stated only that their text communications "might" contain "some attorney-client private discussions." Waly Deposition Excerpt at 9, D.E. 58-2. And during Ali's, their attorney claimed that "[t]here's a lot of attorney-client privilege involved there, depending on what they've talked about." Ali Deposition Excerpt at 9, D.E. 58-1. In neither deposition did the Translators' attorney instruct them not to respond to a question based on privilege. Nor did she or the Translators identify the common interest doctrine as the basis for privilege, identify the specific privileged texts, or serve WorldWide a privilege log. *See* Mem. Supp. Second Mot. Compel at 10. As a result, Translators likely waived their objections to producing their text messages and testifying about them. *See, e.g.*, *Elat v. Ngoubene*, No. PWG-11-2931, 2013 WL 4478190, at *3–4 (D. Md. Aug. 16, 2013). But because the Translators' claim to privilege is ultimately unavailing, the court will address it.

3

communications fall under the protection of the common interest doctrine, an extension of the attorney-client privilege. Resp. Opp'n Second Mot. Compel at 7–8, D.E. 58.

The Translators are wrong. The Fourth Circuit has adopted a four-part test for establishing attorney-client privilege. *United States* v. *Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). First, the party invoking the privilege must show that the privilege holder either was or was seeking to become a client. *NLRB* v. *Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011).[3] Second, the person receiving the communication must be an attorney (or an attorney's subordinate) and acted as an attorney when they received it. *Id.* Third, the communication must relate to facts conveyed by a client outside the presence of strangers and to receive legal services. *Id.* And, fourth, the party must claim the privilege and can show they have not waived it. *Id.*

The Court of Appeals also made clear in *Jones* that a party's voluntary disclosure of privileged information to a third-party "waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." *Id.*

The common interest doctrine serves as a narrow exception to the waiver rule only—it does not create a new privilege out of thin air. *See Mainstreet Collection, Inc.*, 270 F.R.D. at 243. The doctrine began in criminal law, where it was known as the "joint defense privilege," but courts have come to apply it to plaintiffs and defendants in both criminal and civil actions. *Id.* In short, the doctrine protects already privileged information from losing its protection when shared among parties that have an identical legal interest. *Id.* It is therefore imperative that the communication at issue be privileged (or subject to work-product protection) in the first place to be eligible for the common interest exception. *See e.g.*, *id.* (holding that only the portions of a joint communication

---

[3] Given that federal law supplies the rules of decision here, federal law applies to privilege issues. Fed. R. Evid. 501.

that were already subject to the attorney-client privilege or work-product doctrine may be withheld); *In re Grand Jury Subpoenas, 89–3 & 89–4, John Doe 89–129*, 902 F.2d 244, 250 (4th Cir. 1990) (holding that all documents relating to the joint prosecution of a claim against the U.S. Army "and which are subject to the attorney-client or work-product privilege" are protected).

It is no surprise, then, that a party is most likely to invoke common interest doctrine to share protected material that he and his attorney created with another party's attorney when he and the other party share an identical interest. *See, e.g.*, *ECDC Envtl., L.C.* v. *N.Y. Marine & Gen. Ins. Co.*, No. 96CIV.6033(BSJ)(HBP), 1998 WL 614478, at *18 (S.D.N.Y. June 4, 1998).

The presence of counsel is key—several federal courts have held that statements made among co-parties absent an attorney do not qualify for the common interest rule's protection at all. *See, e.g.*, *United States* v. *Gotti*, 771 F. Supp. 535, 545 (E.D.N.Y. 1991) (declining to "extend the application of the joint defense privilege to conversations among the defendants themselves even in the absence of any attorney"); *United States* v. *Lucas*, No. 1:09 CR 222, 2009 WL 5205374, at *6 (N.D. Ohio Dec. 23, 2009) ("[The] joint defense privilege requires the involvement of counsel."). "When a person provides information to another without first consulting his own attorney," the First Circuit has explained, "it is difficult to see how the information was given as part of a joint defense, even when the recipient may be viewed as a party with similar interests." *United States* v. *Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 29 (1st Cir. 1989).

The common interest doctrine, then, serves as a narrow exception to the rule that statements shared with a third party are no longer protected by attorney-client privilege or work-product doctrine. *See In re Grand Jury Subpoenas*, 902 F.2d at 250. It does not establish privilege for all communications made by one plaintiff in a pair of consolidated cases to another—even if those communications relate to the case.

5

So, to claim the common interest doctrine's protection, the Translators must establish that their communications met the traditional requirements of attorney-client privilege before they were shared. They have not done so. The Translators proclaim that "the communications between [Ali and Waly] meet the traditional requisites for the attorney-client or work product privilege," but they never explain why. Resp. Opp'n Second Mot. Compel at 8. But it is their burden—not the court's—to demonstrate that privilege attaches. *See Mainstreet Collection, Inc.*, 270 F.R.D. at 241. This alone is sufficient for the court to conclude that WorldWide is entitled to the discovery it seeks.

But even if the Translators had addressed the reasons for privilege, their claims would be unavailing. WorldWide does not seek production of communications between one Translator and his lawyer that were shared with the other Translator. Instead, WorldWide wants information about the Translators' independent conversations with one another about their consolidated cases. Waly admitted that these conversations took place in person, but he refused to discuss them during his deposition. Waly Deposition Excerpt at 7. Similarly, Ali's testimony suggests that the parties' text messages contain responsive communications, Ali Deposition Excerpt at 5, D.E. 58–1, yet the Translators now maintain that all relevant contact between them occurred orally.[4] Resp. Opp'n Second Mot. Compel at 8.

It seems highly unlikely that the Translators' shared attorney was present when they texted about their case. And when asked whether their attorney was present when the Translators discussed their cases orally, Waly refused to respond. Waly Deposition Excerpt at 8, D.E. 58–2.

---

[4] It appears the Translators' revised position is an attempt to avoid conflict with the court's earlier instructions. The Translators haven't produced a privilege log detailing the specific grounds for their noncompliance. If privileged text communications exist, the Translators' failure to provide a privilege log evinces a blatant disregard of this court's order on WorldWide's prior motion to compel. Order on First Mot. Compel at 5 ("If otherwise responsive documents are being withheld on privilege grounds, Plaintiffs must provide WorldWide with a privilege log that complies with the Federal Rules.").

6

Thus, even if Ali and Waly share an identical legal interest, their discussions outside the presence of their attorney are not entitled to the common interest doctrine's protections. *See Bay State Ambulance*, 874 F.2d at 29.

WorldWide is entitled to resume depositions to gather more information about these nonprivileged communications. It is also entitled to production of non-privileged written communications between the Translators about their case. The court reminds the Translators that failure to comply with a court order carries with it severe sanctions, including dismissal. Fed. R. Civ. P. 37(b).

### B. The Unnamed Linguist

During his deposition, Waly also refused to identify an unnamed translator who allegedly warned him that other WorldWide employees were plotting to have him fired. Waly Deposition Excerpt at 3. WorldWide wants to know this linguist's identity so it can investigate and defend against his allegations, but Waly maintains that confidentiality is necessary to "protect that good Arabic linguist from being fired." *Id.* WorldWide's counsel informed Waly that the translator's identity could remain confidential, but Waly still refused to name him. *Id.* at 5.

Rule 26 empowers the court to limit the scope of discovery for good cause upon a motion for a protective order. Fed. R. Civ. P. 26(c). But the Translators have moved for no such order. And even if they had, they have not shown that Waly's allegation that WorldWide would retaliate against the linguist is credible. The only support for this position is testimony from Waly himself alleging that certain Arab linguists pressured another WorldWide employee to fire Ali in retaliation for reporting improper conduct. *See* Waly Statement at 3, D.E. 58–3. But this self-serving testimony cannot undergird a credible allegation of potential retaliation. The identity of the Arabic linguist is relevant to WorldWide's defense against Waly's claim; the Translators must disclose it.

7

### C. Fees

WorldWide asks that the court order the Translators to cover the costs of their additional depositions and the expenses WorldWide incurred in bringing this motion to compel. Rule 30 gives the court discretion in sanctioning a party that "impedes, delays, or frustrates" a deposition. Fed. R. Civ. P. 30(d)(2). And Rule 37 states that "the court must . . . require the party or deponent whose conduct necessitated the motion" to compel discovery "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id.* 37(a)(5)(A). Because the court grants in full WorldWide's motion to compel—and because it finds that the Translators' refusal to meaningfully participate in discovery was unreasonable—the court orders the Translators to cover the cost of resuming their depositions and to compensate WorldWide for its expenses incurred in bringing this motion.

## II. Conclusion

For the reasons stated above, WorldWide's second motion to compel (D.E. 52) is granted. The court orders the following:

- The Translators must make themselves available within the next 30 days to resume their depositions and provide testimony on the issues discussed in this order.

- The Translators have 14 days to produce all written communications between them that relate to either of their lawsuits. If no such communications exist, the Translators have 14 days to provide declarations or affidavits to that effect. If those communications contain attorney-client communications or work product, they may be withheld, but only if an adequate privilege log is produced by the deadline in this paragraph.

- The parties may agree to modify the deadlines in the preceding two paragraphs.

- The Translators will bear the costs of their additional depositions and cover WorldWide's fees arising out of this motion to compel.

- Within 14 days after the entry of this order, the parties shall meet and confer to agree upon the amount of expenses and attorney's fees that WorldWide should recover.

- If the parties cannot agree on the appropriate amounts of fees and expenses, they should contact the undersigned's case manager, and the court will set a hearing to resolve the matter.

Dated: November 4, 2022

_____
Robert T. Numbers, II
United States Magistrate Judge